M. KAUFMAN *v.* JOSEPHINE WHITNEY.

1. HUSBAND AND WIFE — SEPARATE PROPERTY. — The husband and wife may occupy towards each other, distinct relations as respects property, and the husband may come under obligations of debt to the wife, as can a stranger. Simmons v. Thomas, 43 Miss. R., 31. Nor is it material whether the funds or property appropriated by the husband was with or without the wife's consent. He thereby becomes a creditor which a court of equity will recognize. Wiley v. Gray, 36 Miss. R., 510; Thoms v. Thoms, 45 Miss. R., 263.

2. SAME — VALUABLE CONSIDERATION. — A charge or mortgage of the wife's property, or a sale of it to exonerate the husband's estate, or to pay his debts, or the consumption of the wife's funds, constitute a valuable consideration to support a conveyance from the husband to the wife. Such conveyances when brought into question as fraudulent against creditors, should be tested by the same principles as 'a conveyance by a debtor to a stranger. Vertner v. Humphries, 14 Smed. & Mar., 130; Roach v. Bennett, 24 Miss. R., 355.

3. SAME — ART. 23, CODE 1857. — This statute does not embrace within its provisions conveyances from the husband to the wife, resting upon a valuable consideration. Ratcliffe v. Dougherty, 24 Miss. R., 181.

4. SAME — GENERAL RULE. — The general doctrine of the cases is, that a conveyance made by the husband to the wife directly, if supported by a valuable consideration and pure motives, will in equity be sustained as vesting the estate beneficially in the wife, and will prevail against a creditor.

5. SAME — STATUTE OF LIMITATIONS. — The 5th section of the act of 1867, continues the claim of the wife against the husband during the coverture and afterwards.

6. SAME — EFFECT OF ART. — CODE OF 1857, AND ACTS FEB'Y 5, 1867. —

These statutory provisions provide a rule to protect a creditor and allow him satisfaction out of the property, although bought with the wife's money or effects; if the possession of the husband induced him to give the credit; also to protect a purchaser for value from the husband, without notice of the wife's equity.

APPEAL from the chancery court of Jefferson County. Hon. JAMES M. ELLIS, Chancellor.

The opinion of the court contains a sufficient statement of the case.

*William Sillers*, for appellant :

1. Insisted that the claims of the appellee did not come within the provisions of the act of February 19, 1867, in relation to married women. The act applies only to conversions subsequent to the passage of the act, and cannot affect prior acts of conversion and appropriation by the husband. 1 Black. Com., 46 ; Ledg. Stat., 190; Garrett v. Beaumont, 24 Miss., 379.

The bill is defective and totally insufficient, in not showing the precise dates of the receipts of the money. If the money was received before the date of the act, then neither the deed nor the bill can be sustained under the act of 1867. Appellee's rights accrue only upon conversions of her money or property after the passage of the act of 1867, and only then is preferred to debts and liabilities of the husband incurred after such conversion or appropriation.

2. The deed was not made with an honest intention, but to benefit Whitney. Having children by appellee, his deed to her converted him into a tenant by the courtesy, and he thereby secured to himself and wife the use of the property during her life, and a life estate in himself after her death. All this while he was insolvent. Code of 1857, p. 337, art. 28 ; 4 Kent. Com., 27, 28 ; Stanton v. Green, 34 Miss., 586 ; Hunt v. Knox, ib., 680, 681 ; Mangum v. Finacure, 38 ib., 354, 357 ; Simmons v. Thomas, 43 ib., 38. Appellee was not therefore an innocent or bona fide purchaser, she had full notice of appellant's claim. Pope v. Pope, 40 Miss., 517 ; Perkins v. Swank, 43 Miss., 358, 359.

Appellee, buying some of the goods on credit, and having them charged to her husband, knowing the contract of appellant to supply her husband on credit, seeing the appellant selling the balance on credit to her husband, she and her husband consuming them without making known her claim, is equitably estopped from setting up her claim against appellant. Nixon's heirs v. Carco's heirs, 28 Miss., 431 ; Hilliard et al v. Cagle et al., 46 Miss., 336–345 ; Farmers' Bank Va. v. Douglass, 11 S. &. M., 469 ; Mangum v. Finacune, 38 Miss., 357 ; Simmons v. Thomas, 43 Miss., 38.

The bill rests the appellee's case and claim solely upon the act of 1867, whereas the chancellor decided the case solely upon the proposition that a husband, a debtor to his wife, on account of her separate property may prefer her absolutely as a creditor. Wilie & Co. v. Gray, 36 Miss., 513 ; Allen v. Miles Adams & Co., ib., 640.

Upon the question of adequacy or inadequacy of consideration, there is a wide distinction between a fair, open, public, judicial, official fiduciary sale and a private conveyance made voluntarily without a sale, accounting or settlement. The relation of the parties to this deed is a question of great importance. Price v. Martin, 46 Miss., 500 ; Stanton v. Green, 34 Miss., 586 ; Taylor v. Eckford, 11 S. & M., 34.

Appellee's *allegata* and *probata* do not correspond. See Pinson v. Williams, 23 Miss., 64 ; Bowman v. O'Reilley, 31 Miss., 261 ; Dunlap and Wife v. Hearn, 37 Miss., 475 ; Hanks v. Neal, 44 Miss., 221.

*H. Cassedy*, for appellee :

A creditor may prefer creditors if he does it *bona fide ;* and a husband may become the debtor of his wife and give her a preference in like manner as any other creditor. Roach v. Bennett, 24 Miss., 104 ; Mangum v. Finacune, 38 ib., 357 ; Butterfield v. Stanton, 44 ib., 19 ; Wiley v. Gray, 36 Miss., 510. The capacity of husband and wife after marriage to contract for a *bona fide* and valuable consideration for the transfer of property from the hus-

band to a trustee for the benefit of the wife, or to her directly, is not now a subject open for discussion.    Wiley v. Gray, *supra.*

The criterion by which the value of the land is to be judged is the actual debt due by the husband to the wife, instead of the price named in the deed, which was but an approximation to the real debt.    Simmons v. Thomas, 43 Miss., 31.

If Kaufman seeks to bring his case within article 24 of the revised code of 1857, p. 335, then to obtain the benefit of this statute, he must bring himself fully and clearly within its terms, as it can apply only to the cases specifically described therein, and affirmatively brought within its provisions.    It is not within the provisions of the statute, because, 1st. The husband did not purchase the property with the money of the wife; 2. The trust was not created as a matter of fact; 3. The credit was not given in consequence of the possession of this particular property.    Butterfield v. Stanton, 44 Miss., 26, 27.

6. The statute of limitations of three years is set up to defeat the alternative relief prayed in the bill.    This plea cannot prevail for several reasons :   1st. No statute of limitation runs against a married woman, for the *corpus* of her estate, so long as the disability of coverture exists; 2d. The] statute of limitations confers a personal privilege, and could only have been set up by Whitney; 3d. The right of action of Mrs. Whitney became satisfied by her acceptance of the deed of her husband to the property in payment of the debt; 4th. If the three years provided by the act of February 19, 1867, is intended to be set up, it is replied that the act does not apply to the *corpus* of the estate of married women, only to the income of her separate estate.    See sec. 6 of act, code of 1871, § 13.

Simrall, J., delivered the opinion of the court :

This contestation arises on these facts :    February 25, 1869, J. J. Whitney conveyed to Josephine, his wife, the tract of land the subject of this suit, for the consideration of $2,500 ; recited in the

deed to have been seized by him as the separate property of his wife, but used for his own purposes. The conveyance was in liquidation and satisfaction of the indebtedness. This deed was filed for record on the day of its date.

M. Kaufman, the appellant, recovered a judgment the 22d of November, 1870, against J. J. Whitney for a thousand dollars; under his execution he caused this tract of land to be levied upon, and advertised for sale. Thereupon Mrs. Whitney brought this suit enjoining the sale, setting up ownership in herself, acquired as above stated. The bill has a double aspect, seeking alternate relief, grounded upon the second and third sections of the act of 19th of February, A. D. 1867, " to amend the law heretofore in force respecting the property rights of married women." If the court should decline to uphold the deed as resting title, then a claim is preferred for prior satisfaction out of the land, for so much of the funds and property of the wife as were converted and appropriated by the husband.

Kaufman assails the conveyance to Mrs. Whitney on several grounds, controverting her right to relief in any form, or to any extent.

From the legislation assuring to *femes covert* estates, and the incomes thereof, to their separate use and disposition, it follows that they may contract to a large degree, as if under no disability. They may loan money, among other things. This policy encroaches upon the rules of the common law, and very greatly circumscribes the marital rights of the husband. The husband and wife may occupy towards each other distinct relations as respects property, and the husband may come under obligations of debt to the wife, as can a stranger. Simmons v. Thomas, 43 Miss. Rep.; Thoms v. Thoms, 46 Miss. Nor is it material, where the funds and property of the wife have been appropriated by the husband, whether it was with, or without her consent, as in either event she would be entitled to reimbursement, on the footing that she thereby became a creditor, which relation a court of equity would recognize. Wiley v. Grey, 36 Miss. Rep., 510.

If a duty or obligation rests upon a party, which a court of law or equity esteems valid, a voluntary performance will be upheld and sustained. If the husband could be compelled in a court of equity to compensate the wife for her funds, used by him, very surely a fair settlement and satisfaction made to her voluntarily, would be quite as meritorious as if obtained compulsorily. No objection can be suggested against a discharge of the claim of the wife, by a conveyance to her or for her use, which would not equally apply to a pecuniary payment; if indeed the transaction were characterized by pure motives, and the property were only a fair equivalent of the debt. Such settlements upon the wife have been sustained in this court in several cases. The wife thereby becomes a purchaser for value, and may hold against the creditors and subsequent purchasers from the husband. A charge or mortgage of the wife's property, or a sale of it, to exonerate the husband's estate, or to pay his debts, or the consumption of the wife's funds, constitute a valuable consideration to support a conveyance by him to her.

Such dealings (though to be carefully scrutinized on account of the temptation to give an unfair advantage to the wife over other creditors), must be tested by the same principles, as a conveyance by a debtor to a stranger, when brought into question as fraudulent against creditors. Mangum v. Finnland, 38 Miss., 355; Vestner v. Humphrey, 14 S. and M., 130; Roach v. Bennett, 31 Miss., 93; Wiley v. Grey, (*supra*); Stanton v. Butterfield, 44 Miss., 15. That the husband, being insolvent, preferred the wife, is not, *per se*, an objection to the settlement. Roach v. Bennett, *ubi supra*; but such performance must be made in good faith, and not with a design to secure an advantage to himself; (cases above cited).

Is the conveyance from the husband to the wife of the character claimed in the bill? The defendant assails it as fraudulent, because there was nothing due from her husband to the complainant. Second, the supplemental answer affirms that the property is in value largely in excess of the debt.

Upon the first point the testimony shows, that in ——, J. J. Whitney received from the executor of his wife's father, $891.65, also sundry promissory notes, of the nominal amount of about $3,000. Also in January, 1866, $1,000 in gold, derived from his wife's mother. It is contended for the appellant that this last sum ought not to be esteemed a debt from J. J. Whitney to his wife, until after the mother's death (in 1869). It is shown in the testimony that Mrs. Darden, the mother of Mrs. Whitney, apportioned among her children equally, in January, 1866, five thousand dollars in gold, upon the terms that she was to be supported during her lifetime by her children. It is fairly to be inferred that the principal was to remain with each child, and only the interest or such part of the advancement called in annually as was necessary for her support. This money was received by J. J. Whitney, in 1866, and by him appropriated. If the mother had but a life estate in the fund, remainder to her children, under the will of the husband, the result would not be at all affected. The $1,000 was realized by J. J. Whitney, the loan or advancement having been made by the mother to his wife ; and there arose at once the duty on his part to account to his wife.

The following is a statement of J. J. Whitney's receipts on account of his wife : From the executor of her father, in all, $891.65 ; from his wife's mother, in gold, converted by him into currency, at $400 premium, $1,400 ; notes, nominally, $3,000—upon which five hundred and ninety-nine dollars were collected. Interest might properly have been allowed, the 4th section of the act of 1867 only cutting off recovery for the "*income* of the separate property," after three years from the "conversion." Computing interest upon the several sums from the date of receipt, not exceeding three years, and it shows an indebtedness equal to, and in excess, somewhat, of the value fixed upon the land.

Many witnesses were examined as to the value of the land, and, as common experience attests, differed in opinion. There is no proof of a fraudulent intent, unless the evil design may be in-

ferred from circumstances. No fact is indicated from which such deduction can be made, except the alleged inadequacy in the price. It was not possible, at the time these transactions were occurring, to estimate the value of real estate with arithmetical certainty ; it depended upon locality, fertility, improvements, and demand for that sort of property. The divergence in the estimates of the witnesses proves that. Some were of opinion that the land was worth less than $2,500 ; others, about that sum ; and others, more. It would be a rigid rule, on the question of fraud as to creditors, in the absence of testimony as to the evil intent, to go into a nice balancing of the conflicting opinions of witnesses as to value, and condemn the sale, on a mere preponderance in favor of a higher price than that given. There must be such inadequacy as to beget the belief that the sale was a contrivance to evade creditors. The testimony fails to produce that effect. Weighing and comparing it, a legitimate conclusion might be that the price was fair ; certainly the candid mind would not repose with confidence in the conclusions that the value fixed by the parties was too low.

The appellant interposes the " proviso " to the 23d art., Laws 1857, p. 336, as conclusive of his right to subject the property to his judgment, "that any deed from the husband to the wife for her use, shall be void as against his creditors who were such at the time of executing the deed." Kaufman, the complainant and appellant, was a creditor at the date of the deed, and could successfully plead this statute in avoidance of it, if conveyances resting upon a valuable consideration are embraced by it. The statute of 1839, *pari materia*, "for the protection and preservation of the rights of married women," contained this proviso to the section descriptive of the modes by which she may acquire property, " provided the same does not come from the husband after coverture." In Ratcliffe v. Dougherty, 24 Miss., 181, it was declared that this proviso did not change the rule in equity. That rule was that a post nuptial settlement, though voluntary, was valid

against the husband and his representatives, and, if for a valuable consideration, was good against creditors. In Wiley v. Grey, 36 Miss., 516, it is distinctly announced that this proviso would only affect " voluntary conveyances," though made directly to the wife. The same import and signification was given by this court in Stanton v. Butterfield (*ubi supra*) to the proviso in the statute of 1857, above quoted.

The doctrine of the cases is, that a conveyance made by husband to the wife directly, if supported by a valuable consideration and pure motive, will in equity be sustained as vesting the estate beneficially in her, and will prevail against a creditor.

But the act of 19th February, 1867, sec. 6, repeals this proviso, which leaves the subject to be controlled by the general principles of equity. This repeal, it will be noted, took effect before the execution of the deed from J. J. Whitney to his wife.

If there were any doubt upon the question of the statute of limitations, which is said by the defendant to have barred complainant's claim against her husband, it is disposed of by the 5th section of this act, which continues it in vitality during the coverture, and afterward.

The defendant specially demurred to the bill for multifariousness. It is in accordance with the rules of pleading, and of great practical utility, in many instances, to frame the bill in a double aspect, with a prayer for alternate relief. This bill does not contain two separate and independent causes of action arising out of separate and disconnected transactions. The complainant insists that her purchase from her husband was fair and *bona fide ;* but if the court should find otherwise, then she claims a priority over the defendant to satisfaction of whatever sum may be due her for the conversion and appropriation of her funds by her husband, as provided for in the 2d section of the act of 1867, pp. 725, 726 (pamphlet). This relief depends upon the same series of facts which give rise to the other prayer, that she may be protected in her purchase, viz. : the conversion of her money by the husband,

as in the former alternative, giving her, under the statute, priority over other creditors; and, in the latter, furnishing a valuable consideration for the conveyance made to her. The bill is not multifarious.

The amended and supplemental answer sets up an original liability on Mrs. Whitney for the goods sold and which constitute the cause of the defendant's recovery against J. J. Whitney at law. But it falls far short of stating the necessary facts; it does not aver that when the goods were bought, Mrs. Whitney was the owner of a separate estate.

The answer also sets forth that the goods were sold on the credit of the land, and therefore the defendant had a specific priority over the complainant, although her deed is elder than his payment. This pretension is predicated of the 24th art., Code 1857, p. 336, and the 2d section of the act of 1867, already referred to. Both statutes agree in charging the husband as trustee for the wife, when he employs her money or effects in making purchases, and takes the title in his own name. The last clause of the former is, " but such trust shall be void as against creditors of the husband who contracted or gave credit in consequence of the provision of such property." · The proviso to the latter makes void the trust, in favor of *bona fide* purchasers, without notice of the trust. It is manifest that the statute of 1857 does not apply, because there is no pretense to say that J. J. Whitney expended the wife's money or means in the purchase of the land. The same observation is true of the act of 1867. These statutory provisions provide a rule to protect a creditor, and allow him satisfaction out of the property although bought with the wife's money or effects; if the possession of the husband induced him to give the credit, also to protect a purchaser for value from the husband without notice of the wife's equity.

There is no error in the decree. Let it be affirmed.