## ROSAMOND *v.* ROSAMOND

No. 43168 October 26, 1964 168 So. 2d 294

*Waller, Pritchard & Fox,* Jackson, for appellant.

*Robert W. King,* Jackson, for appellee.

McELROY, J.

This is a suit by Eugenia Bailey Rosamond, complainant, by Bill of Complaint of Divorce against defendant, E. C. Rosamond, Jr., from the Chancery Court of the First Judicial District of Hinds County, Mississippi. The complainant alleged habitual cruel and inhuman treatment. In addition to the divorce, she sought adjudication to have defendant convey to her certain personal property owned by him.

Subsequent to the trial and rendition of a decree by the chancellor granting complainant substantially the relief sought, complainant was killed in an automobile accident on December 31, 1963. A motion to revive and suggestion of death have been filed in this action.

The parties were married February 20, 1960, in the First Judicial District of Hinds County, Mississippi. They lived together as husband and wife, with the exception of one period of separation, until October 2, 1962. They had no children.

The complainant states in her petition that at the time of her marriage she had a considerable savings account and owned stock in the American Telephone & Telegraph Company; that since their marriage she has continued to invest a small portion of her monthly earnings in

stocks; that in order to make the defendant feel she trusted him completely she had all her stock made out in their joint name; that defendant now holds twenty-seven shares of the stock and has told plaintiff he will not surrender it to her nor endorse it over to her, and that she is entitled to the stock, since she bought and paid for all of it. (As a matter of fact, there are forty-seven shares involved.) The proof shows complainant paid for all of the stock while she was working for the telephone company at a salary of about $360 a month. Her petition states she contributed more than her pro rata share to the living expenses of the parties; that she borrowed from the telephone credit union $1,250 (part of which she is still paying back through payroll deductions), and bought a living room suite, a dining room suite, air conditioning unit, and a bedroom suite and bed, all of which defendant has in his home and refuses to turn over to complainant. Complainant further shows she is "rightfully entitled to said items and that the Court should award such items of furniture and all of the aforesaid shares of stock to the complainant and should require the defendant to endorse the stock certificates over to the complainant."

In short, the complainant asked that she be awarded an absolute divorce, her maiden name, twenty-seven shares of American Telephone and Telegraph stock, the furniture purchased by her, and all general and special relief.

Appellant contends, first, that the complainant did not make out a case of cruel and inhuman treatment under the law; and second, that she is not entitled to the return of the stocks or other items.

Mrs. Rosamond testified that she and her husband had domestic difficulties from the beginning. She never did anything right, according to him, whether it was housework, her dealings with his son Donald, or anything else. Mr. Rosamond had been married twice be-

fore, and Donald was a child of his first marriage. Donald loved Mrs. Rosamond and she loved the child. Mr. Rosamond would not take up any time with the child, and many times used Donald to hurt his wife, because he knew how much she loved him. On one occasion he stood over his son with a belt and whipped him each time he failed to get the correct answer to an arithmetic problem. Mrs. Rosamond testified her husband spoke to her only to nag, rave, and curse, and often afterwards would not talk to her at all. Anything would upset him and make him fly into tantrums. They first separated in July 1961. After they reunited in September, the same things happened as before. She felt life held no purpose. He always criticized her, told her she was getting old, and that she had no one but him, Donald and her parents. She felt if she killed herself it would be the best thing, because she did not want to be a burden on him or her parents. She didn't want him to have a gun in the house because of the way she felt, but he told her he would be glad to load it for her any time she wanted to use it on herself. Her husband had never struck her; he had drawn back to hit her, but said he would not do it because she could use it against him in court. At the time of their separation she was very run down, unhappy, and sick. She was always aching, and went to the doctor many times. Complainant testified that her health had improved since their separation. She had not been nervous or unhealthy when they married. It was his distrust and violence that caused her to become that way. We see no necessity of reiterating the repugnant sex relationship outlined by complainant. After their separation, when she went back to his home for her belongings, he insisted that he see each item that she took, and demanded that she return her engagement and wedding rings.

The appellant contends there was no corroboration of complainant's testimony, but Mrs. T. C. Bailey,

mother of complainant, testified to the same effect. She said she went with her daughter to get some personal things, and that Mr. Rosamond fussed and cursed and said, "before she would get anything that he would see them both dead and in you know where." We feel that this is enough to corroborate her contention that he was cruel and inhuman to her, and it affected her health. We believe there was sufficient evidence to justify the court in authorizing the divorce. We feel this testimony showed enough cruel and inhuman treatment endangering her health and creating reasonable apprehension of danger, and such unnatural and infamous conduct as to make the marital relationship revolting. Smith v. Smith, 47 Miss. 211, 40 So. 156 (1872); Pierce v. Pierce, 38 So. 46 (Miss. 1905); Forrester v. Forrester, 101 Miss. 155, 57 So. 553 (1911); Humber v. Humber, 109 Miss. 216, 68 So. 161 (1915); Russell v. Russell, 157 Miss. 425, 128 So. 270 (1930); Price v. Price, 181 Miss. 539, 179 So. 855 (1938); Stringer v. Stringer, 209 Miss. 326, 46 So. 2d 791 (1950); McBroom v. McBroom, 214 Miss. 360, 58 So. 2d 831 (1952); Sandifer v. Sandifer, 215 Miss. 414, 61 So. 2d 144 (1952).

Furthermore, the court had a right to observe the witnesses testifying, and he could and should have taken this fact into consideration. The complainant had been divorced once and appellant twice. This should have been taken into consideration with the cruelty shown to his own child to justify the court in granting this divorce.

The court granted not only the divorce, but restored her former name and awarded her the household furniture, refrigerator, air conditioner and other items purchased by her during the marriage. The chancellor specifically awarded her the wedding presents given at the time of their marriage. In this award was included forty-seven shares of American Telephone and Telegraph Company stock which had been issued in the

joint names of complainant and defendant, with the instructions that the defendant endorse the stock or authorize in writing the reissuance of the stock in the name of complainant. It is to be noted that the testimony of complainant was to the effect she had given this stock to the defendant in their joint names.

Appellant assigned it was reversible error for the trial court to order the appellant to sign over and deliver to appellee corporate stock of forty-seven shares equally and jointly owned by them, when the pleading and proof failed to establish (1) that appellee claimed or prayed for or sought to prove any right for alimony; and (2) the pleading and proof wholly failed in establishing debt owing by appellant to appellee or any other monument of ownership in appellee.

■■ ■ We are of the opinion that the court was correct in returning to the complainant the household furniture, air conditioner, wedding presents, refrigerator, and other items. This was in compliance with Brown v. Brown, 237 Miss. 53, 112 So. 2d 556 (1959), which states:

"They maintained a joint bank account, from which all expenses were paid and into which both of them deposited a substantial part of their earnings. Appellant contends that the properties were purchased with her own individual earnings and those of her husband, and therefore she is entitled to a division of such property. The trial court had jurisdiction to decree a division of the property which had been jointly accumulated by the parties, and to award to appellant that owned by her. Chrismond v. Chrismond, 211 Miss. 746, 52 So. 2d 624, Cert. Denied, 342 U.S. 878, 72 S. Ct. 167, 96 L.Ed. 659 (1951); Wilson v. Wilson, 215 Miss. 273, 60 So. 2d 652 (1952); Duvall v. Duvall, 224 Miss. 546, 80 So. 2d 652 (1955); Griffin v. Griffin, 207 Miss. 500, 42 So. 2d 720, 19 A.L.R. 2d 1423 (1949); Gates v. Gates, 215 Miss. 298, 60 So. 2d 778 (1952). The decree of the

chancery court is reversed insofar as it failed to adjudicate as to the division of the respective properties of the litigants, and the cause is remanded for a hearing and a determination of the facts and application of the law on that issue.'' 237 Miss. 59, 112 So. 2d 559.

We are of the opinion the certificates of stock were a transfer or gift of property in their joint name, as was testified by complainant. It seems to be the great weight of authority and is so held in Mississippi that in a divorce case the court cannot give either party equitable interest in or any right to avoid or set aside a conveyance, transfer, or gift of property made to the divorced spouse before the divorce. 26 Am. Jur., Husband and Wife, § 267. The authority of the court in suits for divorce to transfer the property of either spouse to the other or otherwise dispose of it is purely statutory, and in the absence of such statutory authority a court has no power in such proceedings to deal with vested property rights of spouses. The authority of the court in this respect must be exercised with limits prescribed by statute. 27B C.J.S., § 291(1).

 It appears from the record that the complainant conferred a joint vested interest on her husband irrevocable by the appellee or by the court. The court had no more power to take from the appellant his joint interest in the stock, or any property vested by the gift, than to take from him anything else that was his sole property. The divorce has no effect upon that property which is the wife's solely. Grego v. Grego, 78 Miss. 443, 28 So. 817 (1900).

The court held in Mahaffey v. First Nat'l Bank, 231 Miss. 798, 817, 97 So. 2d 756, 763 (1957):

''It will be noted that the question of a consent decree was not involved in either the Grego case or the McCraney case. We recognize the general rule announced in these two cases to the effect that the court is without power to divest one of title to his property and vest

the same in another by judicial fiat or decree, and we do not depart from it."

We are of the opinion and so hold that the appellant is entitled to the one-half joint interest in these forty-seven certificates of stock. The decree of the learned chancellor is therefore affirmed, insofar as granting the divorce, changing the name, and awarding all of the household furniture, air conditioner, refrigerator, and wedding gifts to complainant. The case is reversed to the chancellor for the purpose of entering such order necessary to award one-half of the stock to the estate of the appellee and one-half of the stock to the appellant.

Affirmed in part, reversed in part, and judgment rendered here and remanded.

*Lee, C. J., and Rodgers, Jones and Patterson, JJ.,* concur.